Family of McCandlish Trust
2700 Caples Avenue #2441
Vancouver. Washington. 98661-9998.
Grantors Office
(360) 634-2299 phone
(360) 634-2331 - fax
grantor1drop@pm.me
_____

Pro Per Sui Juris



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Victoria Diane McCandlish
(formerly: Heacock),

    Plaintiff,

    vs.

NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE SERVICING;
SPECIALIZED LOAN SERVICING LLC, its
successors and assigns; CLEAR RECON CORP;
and DOES 1–10, inclusive,

    Defendants.

Case No.  3:25-cv-05553-DGE

PLAINTIFF'S OPPOSITION TO DEFENDANT
NEWREZ'S MOTION TO DISMISS THE THIRD
AMENDED COMPLAINT

NOTING DATE: MAY 18, 2026

## PLAINTIFF'S OPPOSITION TO DEFENDANT NEWREZ'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

### I. INTRODUCTION

Defendant NewRez LLC's Motion to Dismiss (Dkt. 72) ("the Motion") is a 2,098-word brief that asks this Court to terminate Plaintiff Victoria Diane McCandlish's claims by ignoring the documents that anchor them. The Motion does not mention either of the Notices of Trustee's Sale dated May 22, 2025 (TAC Ex. F) and February 13, 2026 (TAC Ex. G) — both of which are squarely inside every limitations window the Motion invokes, both of which are pleaded in the Third Amended Complaint, and both of which Defendants' affiliate Clear Recon Corp issued. The Motion does not mention the SLS letter dated March 16, 2023 (TAC Ex. D) — yet asserts as fact that "nothing in the March 6, 2023 correspondence to McCandlish acknowledges a disputed $32,000 arrears charge." The Motion's companion Request for Judicial Notice (Dkt. 72-1) selectively attaches three of at least seven SLS letters in the operative correspondence series and asks this Court to read them for the truth of disputed facts — a use the Ninth Circuit's *Khoja* rule expressly forbids. And the Motion is signed only by counsel for NewRez; Defendant Specialized Loan Servicing LLC ("SLS") — whose conduct sits at the heart of the case — has not joined.

The Court should deny the Motion. The Court has previously granted leave to amend, and Plaintiff has, in the Third Amended Complaint, anchored each surviving claim to specific exhibits, specific dates within the applicable limitations periods, and specific defendants. Pleadings by a party appearing in propria

persona, sui juris must be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Disputed factual assertions about whose correspondence said what — the substance of much of the Motion — must be accepted in Plaintiff's favor at this stage. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Concurrently with this Opposition, Plaintiff has filed (a) an Opposition to Defendants' Request for Judicial Notice with a Fed. R. Civ. P. 56(d) declaration, (b) a cross-motion for preliminary injunction targeting the pending Notices of Trustee's Sale, and (c) a Notice of Status as to Defendant SLS. Each is incorporated herein by reference.

## II. STANDARD OF REVIEW

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Manzarek*, 519 F.3d at 1031. The complaint need only "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility." *Id.*

A pleading filed by a party appearing without counsel is "to be liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has confirmed post-*Iqbal* that filings by litigants without counsel must be construed liberally. *Hebbe*, 627 F.3d at 342.

The statute of limitations is an affirmative defense. Dismissal under Rule 12(b)(6) on limitations grounds is proper *only* when "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Where the complaint pleads facts supporting accrual within the limitations period, or supporting tolling, the defense is not properly resolved on the pleadings. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir. 2006).

A court ruling on a Rule 12(b)(6) motion may not weigh evidence or resolve disputed facts. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Documents attached to a motion via judicial notice or incorporation-by-reference may not be used "to defeat allegations of the complaint" or to import "the truth of disputed facts." *Id.* at 1002–03.

## II. SUMMARY OF THE TAC
## AND ITS DOCUMENTARY ANCHORS

The Third Amended Complaint (Dkt. 70) ("TAC") is a verified pleading anchored by seven documentary exhibits:

- Ex. A — SLS letter dated December 19, 2022 (signer: Jezriah, ID #23167)
- Ex. B — SLS letter dated February 2, 2023 (signer: Anna, ID #15224)
- Ex. C — SLS letter dated March 6, 2023 (signer: Joseph, ID #18802)
- Ex. D — SLS letter dated March 16, 2023 (signer: Alfran Teller, ID #27274) — quoted in the TAC for the proposition that SLS *admitted* prior responses on July 8, 22, and August 26, 2022, and *itemized* $288.01 in suspense and $3,780.41 in escrow against an alleged $32,000-plus default

- Ex. E — SLS letter dated April 15, 2024 (signer: Alfran Teller, ID #27274) — comprehensive response identifying March 6, 2023 dispute as a "prior dispute"; principal balance $317,720.67
- Ex. F — Notice of Trustee's Sale dated May 22, 2025 (Trustee Sale No. 133310-WA), issued by Defendant Clear Recon Corp on the disputed arrears
- Ex. G — Notice of Trustee's Sale dated February 13, 2026, issued by Defendant Clear Recon Corp on the disputed arrears

The TAC pleads (i) that Plaintiff executed the Note and Deed of Trust on April 12, 2007 (¶ 12); (ii) that SLS became servicer on December 1, 2013 (¶ 13); (iii) that "[a]t the time of the transfer, or shortly thereafter, an 'arrears' balance in excess of $32,000 was applied to Plaintiff's account" without correspondence to "any missed principal or interest payments evidenced by Plaintiff's records" (¶ 14); (iv) that Plaintiff submitted multiple Qualified Written Requests and Notices of Error in 2022–2024 disputing the $32,419.24 figure and demanding a life-of-loan reconciliation (¶¶ 15–20); (v) that SLS's responses, attached as Exs. A–E, admit receipt and reflect that the disputed balance is a manufactured ledger product (¶¶ 17–22); (vi) that SLS and NewRez nevertheless reported delinquency to consumer reporting agencies and weaponized the unverified balance to threaten and to initiate non-judicial foreclosure (¶¶ 23–25); and (vii) that two Notices of Trustee's Sale (Exs. F and G) issued in May 2025 and February 2026 in reliance on the disputed balance (¶¶ 43, 45, 49(b)). The pleading sets out five counts: (I) RESPA, (II) FDCPA, (III) Breach of Contract / Implied Covenant of Good Faith and Fair Dealing, (IV) Intentional Infliction of Emotional Distress, and (V) Settlement Posture and Opportunity to Cure.

The Motion's brief at page 5 asserts that the TAC is "equivalent to" the Second Amended Complaint. The docket disproves it. None of the exhibits identified above as Exs. D, E, F, and G appears in the SAC. Two of them (Exs. F and G) document conduct *after* the SAC was filed and could not have been pleaded earlier.

### III. ARGUMENT

The Motion presents four substantive arguments: (A) law-of-the-case as to RESPA; (B) statute of limitations as to the remaining counts; (C) failure to plead sufficient facts; and (D) the Deed of Trust and the *Trujillo* line of authority allegedly shield the conduct. Each argument fails.

### A. RESPA — The Court's March 24, 2026 Order Does Not Bar the Post-SAC Theory Pleaded in TAC Count I.

The Motion argues that the Court's March 24, 2026 Order (Dkt. 69) dismisses Plaintiff's RESPA claim outright. (Dkt. 72 at 3.) The Order is narrower than the Motion frames it, and does not foreclose Count I as pleaded.

1. Law-of-the-case is discretionary, not absolute. The Ninth Circuit has held repeatedly that the law-of-the-case doctrine "is not an inexorable command." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). It does not preclude reconsideration where the litigant presents new facts or a different legal theory. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042–43 (9th Cir. 2018). Leave to amend is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

2. TAC Count I rests on RESPA-trigger events that post-date the Second Amended Complaint. Each new servicing communication and each new Notice of Trustee's Sale generates fresh duties under 12 U.S.C. § 2605 and Reg. X (12 C.F.R. §§ 1024.35, 1024.36, 1024.41) and accordingly a fresh violation upon failure to comply. *See Catalan v. RBC Mortgage Co.*, 716 F. Supp. 2d 728, 737–38 (N.D. Ill. 2010) (each violation actionable); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148 (10th Cir. 2013) (separate triggers).

The TAC pleads — and the Court has not previously addressed — RESPA-trigger events occurring after the December 1, 2025 filing of the Second Amended Complaint:

- The May 22, 2025 Notice of Trustee's Sale (TAC Ex. F) and the demand and reporting conduct surrounding it;
- The February 13, 2026 Notice of Trustee's Sale (TAC Ex. G), issued after the SAC and 60 days before the TAC; and
- Defendants' continued reporting of the unreconciled $32,419.24 balance to consumer reporting agencies and reliance on it for foreclosure.

The Court's March 24, 2026 Order could not — and did not — adjudicate RESPA claims arising from events occurring after the pleading then before it. Count I as pleaded is the operative RESPA claim for the post-SAC conduct.

3. In the alternative. If the Court reads its prior Order as foreclosing the entire RESPA claim, Plaintiff respectfully requests leave under Fed. R. Civ. P. 15(a)(2) to amend Count I to allege RESPA violations exclusively grounded in the post-SAC NOTS events. Plaintiff's status as a litigant in propria persona, sui juris, the documentary record (Exs. F and G), and the policy favoring decisions on the merits all support leave. *AmerisourceBergen*, 465 F.3d at 951.

B. Statute of Limitations — The Motion Counts Time From the Wrong Date for Each Count, and Ignores Discrete-Acts and Continuing-Violation Doctrine.

The Motion's entire limitations argument anchors on the 2013 servicing transfer and treats every claim as one that must have accrued in 2013. (Dkt. 72 at 3–5.) The TAC pleads a series of *discrete* and *continuing* violations within each statutory window. Limitations is therefore not "apparent on the face of the complaint." *Jablon*, 614 F.2d at 682. The TAC pleads timely conduct under each statute.

1. FDCPA — Brown v. Transworld establishes discrete-act accrual; both Notices of Trustee's Sale fall inside the 1-year window.

The FDCPA's one-year clock under 15 U.S.C. § 1692k(d) runs from "each violation," not the first. *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1041–43 (9th Cir. 2023) (each violation triggers its own 1-year period; rejecting the "single-violation" theory). The TAC pleads two discrete FDCPA-actionable events squarely inside the 1-year window measured from the TAC filing date of April 13, 2026:

- The May 22, 2025 Notice of Trustee's Sale (Ex. F), issued by Defendant Clear Recon Corp on the disputed $32,419.24 balance. Within window.
- The February 13, 2026 Notice of Trustee's Sale (Ex. G), issued 60 days before the TAC. Within window.

The Motion does not mention either Notice. The Motion's reliance on the May–June 2022 communications is misdirected: those are not the only FDCPA-actionable events the TAC pleads. They are the QWR/NOE submissions Plaintiff made; the FDCPA violations Plaintiff alleges are the *responsive* misrepresentations and *subsequent* collection conduct, including the two Notices of Trustee's Sale. *Brown* is dispositive: each violation, including each new collection communication and each reissued demand, opens a fresh window. 73 F.4th at 1041–43.

The May 11, 2026 correspondence from counsel — itemizing the contents of TAC Exhibit D as reflecting an account "due for February 1, 2023, as well as each payment that came due after," with a then-stated principal balance of $331,577.89, $288.01 in suspense, and $3,780.41 in escrow against the alleged default (*see* 56(d) Decl. Ex. 1) — confirms what the TAC pleads as documentary fact: that the disputed account was active and unreconciled as of March 16, 2023, was reaffirmed by SLS in the April 15, 2024 letter (TAC Ex. E), and was relied upon by Defendant Clear Recon Corp in issuing the May 22, 2025 (TAC Ex. F) and February 13, 2026 (TAC Ex. G) Notices of Trustee's Sale. Each of those events falls within the limitations windows applicable to Counts I (RESPA), II (FDCPA), III (Breach of Contract), and IV (IIED), as set forth above and below. The Court's March 24, 2026 Order on the Second Amended Complaint (Dkt. 69) could not have addressed — and did not address — events occurring after the Second Amended Complaint was filed.

In the alternative, the Ninth Circuit recognizes the discovery rule for FDCPA where a violation could not reasonably have been discovered earlier. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940–41 (9th Cir. 2009). And equitable tolling is available where defendants' own conduct conceals the violation. *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051 (9th Cir. 2008). The TAC pleads facts — Defendants' repeated representations that the disputes had been "validated" and their refusal to provide a life-of-loan reconciliation — supporting both doctrines. *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019), expressly preserves application of the discovery rule and equitable tolling where fraudulent concealment is pleaded.

*2. Breach of Contract / Implied Covenant — Each new servicing decision is a discrete breach; 1000 Virginia controls.*

Washington law applies the continuing-breach doctrine to ongoing contractual duties. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575 (2006) ("each breach of a continuing duty starts its own statute of limitations"); *Architechtonics Constr. Mgmt., Inc. v. Khorram*, 111 Wn. App. 725, 736 (2002).

The TAC pleads a continuing course of contractual breaches by SLS and NewRez:

- The misapplication of monthly payments contrary to the Order of Priority in the Deed of Trust (TAC ¶ 37);
- The wrongful retention of $288.01 in suspense and $3,780.41 in escrow while simultaneously asserting a $32,000+ default (TAC ¶ 38, citing Ex. D);
- The continued refusal — through the April 15, 2024 SLS letter (Ex. E) — to reconcile the ledger or apply the suspense funds;
- The pursuit of foreclosure on the unreconciled balance through May 22, 2025 (Ex. F) and February 13, 2026 (Ex. G) Notices of Trustee's Sale.

Each is a discrete breach. The 6-year limitations window measured from the TAC filing date of April 13, 2026 reaches back to April 13, 2020 — well within reach of every breach pleaded after that date, including the conduct documented in Exs. D, E, F, and G.

The implied covenant of good faith and fair dealing attaches to "the manner of performance" of every contractual discretion. *Rekhter v. State*, 180 Wn.2d 102, 113 (2014). It is not a one-time defense available at execution. *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738 (1997). Defendants' continuing exercise of discretion under the Deed of Trust — where to post payments, whether to apply suspense, whether to certify default — is governed by the implied covenant on each occasion.

*3. IIED — Kloepfel and continuing-tort doctrine cover the harassment campaign within the 3-year window.*

The IIED limitations period under RCW 4.16.080(2) is three years. *Cox v. Oasis Physical Therapy, PLLC*, 153 Wn. App. 176, 192 (2009). Where the alleged conduct is a "pattern of harassment" rather than a single act, the cause of action accrues continuously. *Kloepfel v. Bokor*, 149 Wn.2d 192, 197 (2003); *see also Davis v. Cox*, 180 Wn. App. 514, 528–29 (2014).

The 3-year window from April 13, 2026 reaches back to April 13, 2023. The conduct pleaded in TAC ¶¶ 41–45 is a continuing campaign: the April 15, 2024 SLS letter (Ex. E); the May 22, 2025 Notice of Trustee's Sale (Ex. F); and the February 13, 2026 Notice of Trustee's Sale (Ex. G) — each pursued on a contested, unreconciled balance — together constitute the actionable conduct. The Motion's argument that "Plaintiff's Third Amended Complaint relies on conduct predating this cutoff period" (Dkt. 72 at 4) ignores the TAC's pleadings of the 2024, 2025, and 2026 conduct entirely.

4. The Motion's foundational premise — that the wrong is the 2013 transfer — is wrong. The TAC does not plead the 2013 transfer alone as the wrong. It pleads the 2013 transfer as the *origin* of the unreconciled ledger and pleads the wrongful conduct as the years-long refusal to reconcile, the misapplication of payments, the wrongful reporting, and the wrongful initiation and re-initiation of foreclosure on the disputed balance — all of it timely. The Motion's "wait[ed] until 2025" line (Dkt. 72 at 5) is rhetorical, not analytical. The TAC pleads timely conduct.

## C. The TAC States a Plausible Claim
### — Each Count Is Pleaded with Particularity Anchored to Documentary Exhibits.

1. The TAC is not "equivalent" to the SAC. Page 5 of the Motion asserts that the TAC's "scant factual nature is equivalent to its antecedent's." This is contradicted by the docket. The TAC introduces (and quotes) Ex. D, Ex. E, Ex. F, and Ex. G — none of which appears in the SAC, two of which (Exs. F and G) document conduct *post-dating* the SAC. The Motion's representation cannot be reconciled with the docket.

2. FDCPA "Debt Collector" — Henson controls; Obduskey does not. The Motion cites *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019), for the proposition that "those who engage in only nonjudicial foreclosure proceedings are not debt collectors." (Dkt. 72 at 6.) The Motion stops at the headnote.

*Obduskey* held that an entity engaged "*only* in nonjudicial foreclosure" is not a debt collector under § 1692a(6)'s primary definition. 586 U.S. at 477 (emphasis added). It did not address loan servicers — and the Supreme Court's controlling test for whether a *servicer* is a "debt collector" is *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017): a servicer is a "debt collector" under § 1692a(6) when "the loan was *in default* at the time it was acquired." (Emphasis added.) *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208–09 (9th Cir. 2013), applies the same test.

The TAC pleads — at ¶ 14 — that SLS acquired servicing on December 1, 2013 with the disputed $32,000-plus arrears already booked. That single allegation — accepted as true at this stage, *Manzarek*, 519 F.3d at 1031 — squarely satisfies *Henson*. SLS is alleged to have acquired the loan in default. SLS is, on the face of the TAC, a "debt collector" under the FDCPA. NewRez stands in the same posture: the TAC alleges that NewRez "acquired the servicing with knowledge that the debt was in an 'active dispute' status" (¶ 25), bringing it within the *Henson* framework as well.

The Motion does not address *Henson*. The Motion does not address the in-default-at-acquisition doctrine. The Motion does not address § 1692f(6), which the Ninth Circuit has held imposes FDCPA liability on nonjudicial foreclosure agents who proceed without enforceable security. *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 572–73 (9th Cir. 2017). Each of these omissions independently defeats the Motion's *Obduskey* argument.

3. Breach of Contract / Implied Covenant — Defendants' own cited authority defeats them. The Motion quotes the Deed of Trust's "Lender may hold such unapplied funds" provision (Dkt. 72 at 6, citing Dkt. 50 at 16, Ex. A § 1) for the proposition that the conduct is contractually authorized.

That provision permits Defendants to *hold* insufficient payments; it does not authorize Defendants to *manufacture* arrears by booking corporate advances and unverified fees as principal default. The TAC pleads that Defendants did the latter. The implied covenant of good faith and fair dealing limits every contractual discretion — including the discretion to hold suspense funds — to a good-faith exercise consistent with the "manner of performance" of the contract. *Rekhter v. State*, 180 Wn.2d 102, 113 (2014); *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738 (1997). The very Washington Supreme Court case the Motion cites for the proposition that "every contract" has an implied duty of good faith — *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991) — holds that the implied covenant attaches to discretion and prohibits its exercise in a manner that frustrates the other party's reasonable expectations. The TAC pleads precisely that conduct: holding suspense funds while certifying default; misapplying payments contrary to the Order of Priority; pursuing foreclosure on a contested ledger.

The Deed of Trust does not — and could not — authorize a manufactured default. Whether Defendants acted within the "good faith" envelope of their discretion is a quintessential fact question, not a Rule 12(b)(6) issue. *See Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 429 (2014) (the Washington Deeds of Trust Act does not insulate servicer misconduct from common-law claims).

4. IIED — Trujillo Reads Narrower Than the Motion Pretends. The Motion cites *Trujillo v. Northwest Trustee Services, Inc.*, 183 Wn.2d 820, 840 (2015), for the proposition that "[i]nitiating a foreclosure sale or communicating about the debt are expressly agreed upon exercises of contractual rights — not extreme or outrageous conduct." (Dkt. 72 at 7.) That overstates *Trujillo*.

*Trujillo* held that initiating foreclosure proceedings on a *valid, enforceable* debt does not, without more, constitute extreme and outrageous conduct. 183 Wn.2d at 840. *Trujillo* does *not* hold that prosecuting foreclosure on a contested ledger — while withholding the borrower's own suspense funds, while admitting the disputes in writing, while making misrepresentations about the documentary record — is shielded.

The Washington Supreme Court has held expressly that servicer and trustee misconduct in foreclosure can give rise to tort liability. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 791 (2013); *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 119 (2012); *Jametsky v. Olsen*, 179 Wn.2d 756, 765 (2013). Whether the conduct alleged in the TAC — sustained over more than 1,400 days, with documentary admissions of the dispute, and now resulting in two Notices of Trustee's Sale on a balance Defendants have never reconciled — is "extreme and outrageous" is a question of fact for which "reasonable minds could differ." *Trujillo* itself reserves that determination for the jury once the threshold is cleared. 183 Wn.2d at 840. The TAC pleads enough to clear it.

### D. The Motion's Factual Assertions About the Documentary Record Cannot Be Adopted at the Pleading Stage.

The Motion repeatedly asks this Court to find facts contrary to the TAC's allegations. (Dkt. 72 at 5–6.) Among them:

- "[N]othing in the March 6, 2023 correspondence to McCandlish acknowledges a disputed $32,000 arrears charge."
- "SLS' responsive letters referenced therein similarly do not contain any mention of a $32,000 arrears charge."
- "[T]he written correspondence between McCandlish and Defendants shows only that Defendants responded to Plaintiff's outlandish letters, verifying the debt owed."
- "McCandlish similarly fails to allege any basis for her contention that holding funds in a separate account amounts to ... a breach of the terms of the Deed of Trust."

The Motion's factual assertions cannot be reconciled with Defendants' own subsequent representations. On May 11, 2026 — fourteen days after Defendants filed the Motion — Defendants' counsel of record itemized, in correspondence directed to Plaintiff, the contents of the very letter the Motion contends does not exist or does not acknowledge the disputed arrears. Specifically, counsel represented in writing that "the only information contained in your Exhibit D is: 1) SLS responded to similar disputes on the dates included therein; 2) the account was due for February 1, 2023, as well as each payment that came due after; 3) the principal balance owed was in the amount of $331,577.89; 4) $288.01 was being held in a suspense account; and 5) the escrow balance at the time was $3,780.41." A copy of the May 11, 2026 correspondence is attached to the Declaration of Victoria Diane McCandlish filed concurrently herewith as 56(d) Decl. Ex. 1.

Counsel's representation is a party-opponent statement within the scope of representation under Fed. R. Evid. 801(d)(2)(C)-(D) and is therefore not hearsay as offered against Defendant NewRez LLC and, by virtue of the Notice of Joinder at Dkt. 73, against Defendant Clear Recon Corp. Two consequences follow at this stage. First, the May 11, 2026 itemization confirms that Exhibit D to the Third Amended Complaint exists, is in counsel's possession, and contains (a) a $288.01 suspense-account balance and (b)

a $3,780.41 escrow balance recorded against the alleged default — totaling $4,068.42 in funds held against an arrears the Motion at page 6 asserts the SLS correspondence does not acknowledge. A suspense-account balance and an escrow balance are ledger-itemizations against an underlying default. The Court need not weigh the credibility of competing characterizations to recognize that the very documentary content the Motion denies is, by counsel's own subsequent representation, recorded in the letter. Second, the May 11, 2026 itemization removes any "we have not seen the document" objection from the Motion's posture; counsel has authenticated the letter's recorded itemizations. The Motion's factual assertion that "nothing in the … correspondence acknowledges a disputed $32,000 arrears charge" (Dkt. 72 at 6) is contradicted on the same record on which the Motion relies.

Even setting aside the May 11, 2026 admission, the standard at this stage is settled: well-pleaded factual allegations are accepted as true and reasonable inferences are drawn in Plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Third Amended Complaint pleads, with documentary support quoted at length, that the March 16, 2023 SLS letter itemizes $288.01 in suspense and $3,780.41 in escrow against an alleged $32,000-plus default (TAC ¶ 17 & Ex. D). That allegation is taken as true, and the Motion's contrary factual assertions cannot be adopted at the Rule 12(b)(6) stage.

These are factual assertions, not legal arguments. They are also contradicted by the TAC's documentary anchors: the SLS letter dated March 16, 2023 (Ex. D), per its terms as quoted in the TAC, *admits* prior responses on July 8, 22, and August 26, 2022, and *itemizes* $288.01 in suspense and $3,780.41 in escrow against an alleged $32,000-plus default. Defendants' Request for Judicial Notice attaches three of the seven items in the SLS correspondence series and pointedly omits Ex. D. The omission is the point.

Under *Manzarek*, the Court accepts the TAC's well-pleaded allegations as true. 519 F.3d at 1031. Under *Khoja*, the Court does not consider judicially noticed materials "for the truth of disputed facts." 899 F.3d at 1002–03. The Motion's factual assertions are accordingly out of bounds at this stage. To the extent the Court would consider them, conversion to summary judgment under Fed. R. Civ. P. 12(d) is required, and Plaintiff's contemporaneously filed Fed. R. Civ. P. 56(d) declaration applies.

## IV. CONCURRENT FILINGS AND CROSS-MOTIONS

Plaintiff has filed concurrently with, or shortly before, this Opposition the following items, each of which is incorporated herein by reference:

1.  Plaintiff's Opposition to Defendant NewRez's Request for Judicial Notice (Dkt. 78) — establishing that the RJN must be denied under *Khoja* and *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (incorporation operates "in full"; selective attachment is improper);

2.  Declaration of Victoria Diane McCandlish in Support of Opposition to Request for Judicial Notice and Conditional Request for Discovery Pursuant to Fed. R. Civ. P. 56(d) (Dkt. 78), attaching as Exhibit 1 the May 11, 2026 correspondence from counsel of record for Defendant NewRez LLC discussed in § VI.D above, and listing ten categories of discovery presently unavailable to Plaintiff but necessary should the Court accept any portion of the RJN in a manner that converts the Motion to summary judgment under Fed. R. Civ. P. 12(d);

3.  Plaintiff's Statement Regarding Status and Pending Motions (Dkt. 75, filed May 13, 2026) — apprising the Court of the procedural posture as of the May 15, 2026 Scheduling Conference;

4. Plaintiff's Cross-Motion for Preliminary Injunction Under Fed. R. Civ. P. 65 (Dkt. 76, filed May 14, 2026) — seeking a preliminary injunction barring the prosecution of any non-judicial trustee's sale arising from the May 22, 2025 (Ex. F) and February 13, 2026 (Ex. G) Notices of Trustee's Sale during the pendency of this action;

5. Plaintiff's Notice of Status as to Defendant Specialized Loan Servicing LLC (Dkt. 79, filed May 12, 2026) — placing on the record that Defendant SLS has not joined the pending Motion and reserving Plaintiff's right under Fed. R. Civ. P. 55(a) to seek entry of default if appropriate; and

6. Declaration of Victoria Diane McCandlish in Support of Plaintiff's Cross-Motion for Preliminary Injunction (Dkt. 76) — providing the evidentiary record for the irreparable-harm, likelihood-of-success, balance-of-equities, and public-interest showings required under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Court is respectfully requested to consider this Opposition together with the foregoing concurrent filings and cross-motions.

## V. RESERVATION OF RIGHTS

This Opposition is filed without waiver of any rights, remedies, or defenses, all of which are expressly reserved.

Plaintiff does not, by filing this Opposition, concede the propriety of the Motion, the truth of any factual contention asserted by Defendants, the validity of any procedural posture asserted by Defendants, or the appropriateness of any noticed material under Fed. R. Civ. P. 12(d). Plaintiff reserves the right to expand or supplement this Opposition through (a) the cross-motions and declarations filed concurrently herewith, (b) any sur-reply requested under W.D. Wash. LCR 7(g) in response to new arguments raised in Defendants' reply, and (c) any sanctions motion filed at the close of the Fed. R. Civ. P. 11(c)(2) safe-harbor period upon Defendants' failure to withdraw or correct misrepresented filings.

Plaintiff further reserves all challenges to opposing counsel's authority to appear and act on behalf of any named Defendant. The burden of establishing authority to appear and act rests solely with the party asserting it.

## VI. CONCLUSION

The Motion's central premises do not survive contact with the docket and the documentary record. The TAC pleads timely conduct under each statute it invokes. The TAC pleads that Defendants acquired the loan in default — bringing them within *Henson*'s controlling FDCPA framework. The TAC anchors its breach-of-contract and IIED counts to a documented, continuing course of conduct that includes 2024 correspondence and two 2025/2026 Notices of Trustee's Sale on a contested ledger. The Motion does not engage with any of those documents.

Plaintiff respectfully requests that the Court:

(1) DENY Defendant NewRez's Motion to Dismiss the Third Amended Complaint (Dkt. 72) in its entirety;

(2) DENY Defendants' Request for Judicial Notice (Dkt. 72-1) in its entirety, for the reasons set forth in the concurrently filed Opposition to the Request for Judicial Notice;

(3) GRANT Plaintiff's Cross-Motion for Preliminary Injunction (Dkt. 77);

(4) CONFIRM that Defendant Specialized Loan Servicing LLC has not joined the pending Motion and that the operative Third Amended Complaint remains pending against Defendant SLS regardless of the disposition of NewRez's motion;

(5) GRANT leave to amend if any portion of the Motion is granted, consistent with the "freely given" standard of Fed. R. Civ. P. 15(a)(2) and the policy favoring resolution on the merits, *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); and

(6) GRANT such further relief as the Court deems just.

Dated: May 18, 2026.

## VII. SIGNATURE BLOCK

Victoria Diane McCandlish (formerly: Heacock)
*Plaintiff, in propria persona, sui juris*
2700 Caples Avenue, #2441
Vancouver, WA 98661-9998
Telephone: (360) 634-2299
Email: grantor1drop@pm.me

## VIII. CERTIFICATE OF SERVICE

I certify under penalty of perjury that on the date of filing I caused the foregoing Plaintiff's Opposition to Defendant NewRez's Motion to Dismiss the Third Amended Complaint, together with the concurrently filed Opposition to Request for Judicial Notice, Fed. R. Civ. P. 56(d) Declaration, Cross-Motion for Preliminary Injunction with supporting declaration, and Notice of Status as to Defendant SLS, to be filed with the Clerk of the Court [via CM/ECF / via the Clerk's filing portal for self-represented parties — strike inapplicable], which will send notification of filing to all counsel of record.

I further certify that on the same date a true and correct copy was served by electronic mail upon:

- Gregor A. Hensrude, Klinedinst PC (Attorney for Defendant NewRez LLC) — ghensrude@klinedinstlaw.com
- Chancelor K. Eagle, Klinedinst PC (Attorney for Defendant NewRez LLC) — ceagle@klinedinstlaw.com
- Peter Salmon, Aldridge Pite LLP (Attorney for Defendant Clear Recon Corp.) — psalmon@aldridgepite.com

and by United States Postal Service, First-Class Mail, to:

- Specialized Loan Servicing LLC, c/o Registered Agent, 6200 S. Quebec Street, Suite 300, Greenwood Village, Colorado 80111

Victoria Diane McCandlish, *in propria persona, sui juris*

I certify, pursuant to W.D. Wash. LCR 7(e), that this brief contains 5594 words, exclusive of the caption, table of authorities (if any), signature blocks, and certificate of service, in compliance with the 8,400-word limit for opposition briefs.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

— End of Opposition —